UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-10022-CR-MARTINEZ/SNOW

UNITED STATES OF AMERICA,

Plaintiff,

vs.

LEON JESUS SAIZ FERNANDEZ,

Defendant.
_________________________________/

REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant, Leon Jesus Saiz Fernandez' Motion to Suppress Physical Evidence (ECF No. 20), which was referred to United States Magistrate Judge, Lurana S. Snow, for a Report and Recommendation.

The Defendant is charged by Indictment with encouraging an alien to enter the United States unlawfully, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv). The Defendant seeks to suppress evidence obtained as the result of the seizure from him of a Garmin GPS device. He challenges the warrantless seizure of the device as well as the delay by the Government in obtaining a search warrant for it.[1] The Motion is fully briefed and an evidentiary hearing was conducted on September 25, 2020.

---

[1] At the evidentiary hearing, counsel for the Defendant withdrew a third challenge based on the date on which the Search Warrant was executed. Accordingly, the undersigned has not discussed hearing evidence pertaining to this issue.

## I. EVIDENCE PRESENTED

The sole witness at the hearing was Homeland Security Investigations (HSI) Special Agent Phissamay Heng, who stated that she has been a special agent with HSI and its predecessor since 1997, and that her duties have included investigations of alien smuggling. Agent Heng has received extensive training is this area.

On November 2, 2019, when Agent Heng was the duty HSI agent in Key West, Florida, she was notified of a possible alien smuggling case. Agent Heng learned that a United States Coast Guard (USCG) aircraft had spotted a jet ski 34 miles south of Key West, and that a small USCG boat had been launched to intercept the jet ski. The jet ski was intercepted 17 nautical miles south of Key West, at which time the boarding officer noticed that the jet ski bore FL numbers and had two people on board: the Defendant and a passenger. The passenger was wearing a white T-shirt and full length leggings.

Agent Heng testified that the Defendant told the boarding officer that he was traveling from the northeast, but did not know the name of the departure city. The Defendant then stated that he was coming from Stock Island. He later offered a third response that the jet ski was from Naples. The Defendant related that he had picked up his girlfriend, whom he identified as the passenger, and was taking her around the harbor. When the boarding officer pointed out to the Defendant that was 16 miles from the harbor, the Defendant replied that this was as far south as he had traveled. When confronted with the fact that he had been spotted 30 miles south of shore, the Defendant stated that he had turned around because he had run out of fuel.

The boarding officer then announced that she would be boarding the jet ski and asked the Defendant for his license and registration, which the Defendant

produced. The passenger had no identification, and the Defendant stated that he did not know her name. The Defendant then spoke in Spanish to the passenger, after which the passenger provided her name and date of birth. When asked why he did not know his girlfriend's name, the Defendant responded that it was a new relationship.

The Defendant told the boarding officer that his girlfriend was very seasick and that she had medication on board the jet ski. However, when the boarding officer offered to retrieve the medication, the Defendant declined. USCG officers then boarded the jet ski and seized a Garmin GPS device and 2 hand-held radios. Subsequently it was determined that the passenger had no lawful status in the United States and she was repatriated to Cuba. The Defendant was advised of his Miranda rights, at which time the Defendant requested an attorney.

Agent Heng testified that the Garmin was seized because navigational devices frequently are used by alien smugglers. On November 3, 2019, the agent contacted the HSI legal department for advice on whether a warrantless border search of the Garmin could be conducted. On November 6, 2019, when she still had not heard back from HSI counsel, Agent Heng composed a draft search warrant application, which she emailed to the assigned prosecutor. The prosecutor relayed his edits to the draft application, which Agent Heng made. On November 8, 2019, the agent emailed the edited application to the prosecutor, who stated that he would call Agent Heng back on November 12, 2019, after the Veteran's Day holiday. The prosecutor also informed Agent Heng that he was about to begin a trial.

Agent Heng finally heard back from the HSI legal department on November 15, 2019. HSI counsel advised the agent that it would be prudent to obtain a search warrant for the Garmin. The editing process on the search warrant application continued until November 19, 2019, at which time the application was

emailed to the undersigned. The undersigned requested further edits to the application and informed Agent Heng that the Search Warrant would be issued on November 22, 2020, when the undersigned next would be in Key West.

On cross-examination by counsel for the Defendant, Agent Heng testified that she did not know whether swim wear inside a bag was located on the jet ski at the time of boarding. The agent acknowledged that GPS navigation devices and radios are commonly used by boaters. Agent Heng also stated that the jet ski was piloted to the USCG cutter by Coast Guard personnel. She testified that the Defendant was not arrested immediately because the prosecutor wanted to wait for the results from the search of the Garmin.

Agent Heng conceded that only three paragraphs of the search warrant affidavit were fact-specific. She stated that she began work on the affidavit quickly in case it was needed, but admitted it was not presented until 12 days later. The agent testified that the jet ski had been seized, but was returned to the Defendant the following day. She did not know whether the Defendant had asked for the return of his other property.

In response to a question posed by the undersigned, Agent Heng testified that it was unusual for a jet ski to travel 30 miles from shore because of limited fuel range. She added that the Defendant stated that he had an extra fuel container.

## II. RECOMMENDATIONS OF LAW

The Defendant challenges the warrantless seizure of the Garmin as well as the delay in presenting the Search Warrant to the undersigned. The Government responds that the seizure was reasonable and permissible under 14 U.S.C. § 522(a), and also was authorized as a border and/or inventory search. The Government also argues that the search warrant should not be invalidated based on delay.

A. Seizure of the Garmin

The Defendant argues that the warrantless seizure of his Garmin was a violation of his Fourth Amendment rights. In his Reply memorandum, the Defendant concedes that the USCG has authority to seize property, pursuant to 14 U.S.C. § 522(a), which provides, in pertinent part:

> The Coast Guard may make inquiries, examinations, inspections, searches, seizures, and arrests upon the high seas and waters over which the United States has jurisdiction, for the prevention, detection, and suppression of violations of laws of the United States. For such purposes, commissioned, warrant, and petty officers may at any time go on board of any vessel subject to the jurisdiction, or to the operation of any law, of the United States, address inquiries to those on board, examine the ship's documents and papers, and examine, inspect, and search the vessel and use all necessary force to compel compliance.

The Defendant argues that the seizure of his property was unreasonable, relying on United States v. Place, 462 U.S. 696 (1983), which dealt with the issue of "the reasonableness under the Fourth Amendment of warrantless seizures of personal luggage from the custody of the owner on the basis of less than probable cause, for the purpose of pursuing a limited course of investigation, short of opening the luggage, that would quickly confirm or dispel the authorities' suspicion." Id. at 702. Specifically, the court was asked to apply the principles of Terry v. Ohio, 392 U.S. 1 (1968), "to permit such seizures on the basis of reasonable, articulable suspicion, premised on objective facts, that the luggage contains contraband or evidence of a crime." Id. The court held that such seizures were permissible, concluding that "that when an officer's observations lead him reasonably to believe that a traveler is carrying luggage that contains narcotics, the principles of Terry and its progeny would permit the officer to detain the luggage briefly to investigate the circumstances that aroused his suspicion, provided that the investigative detention is properly limited in scope." Id. at 706.

Nevertheless, the court found that the detention of Place's luggage, while Place was at an airport preparing to board a domestic flight, until the arrival of a narcotics detection dog was unlawful. The court found that the police actions in detaining the luggage exceeded the limits of a Terry-type investigative stop based on the 90-minute period of detention, which was "exacerbated by the failure of the agents to accurately inform respondent of the place to which they were transporting his luggage, of the length of time he might be dispossessed, and of what arrangements would be made for return of the luggage if the investigation dispelled the suspicion." Id. at 710.

The Government's Response to the instant Motion does not address Place because the case was not cited by the Defendant until he filed his Reply. However, the Government does argue in the Response that the seizure of the Defendant's Garmin was supported by probable cause, rather than by reasonable suspicion as in Place.

In United States v. Lopez, 761 F.2d 632, 636 (11th Cir. 1985), the Court noted that pursuant to 14 U.S.C. § 89(a) (recodified as 14 U.S.C. § 522(a)), Coast Guard officers are authorized to conduct document and safety inspections without suspicion of criminal activity. A limited search "is permissible on a reasonable suspicion of criminal activity; and a full, 'stem to stern' search may be undertaken on probable cause." Id. The standard for determining whether probable cause exists is "whether there were facts and circumstances known to law enforcement officials which could have warranted their reasonable belief that a crime had been or was being committed, or whether viewing such facts in their totality, together with the synthesis of what the agents collectively heard, knew and observed, all considered in light of the agent's individual experience, there was the probability that criminal activity was afoot." Id. (Citations omitted.)

Based on the totality of the circumstances, the undersigned agrees with the Government that the Coast Guard boarding officers had probable cause to believe that the Garmin contained evidence of the crime of alien smuggling. The Defendant first was spotted 30 nautical miles south of Key West, an inordinately great distance from shore for a jet ski with limited fuel capacity; he was intercepted 16 miles south of Key West, demonstrating that he had been traveling from south to north (consistent with travel from Cuba); he gave three conflicting responses to queries about the place from which he had departed; he falsely stated that he was taking his passenger around the harbor; he related that he was nearly out of fuel and his passenger was seasick, and he described his passenger as his girlfriend but claimed not to know her name. Additionally, the passenger was wearing inappropriate clothing for riding a jet ski and spoke only in Spanish. Finally, alien smugglers are known to use navigational devices to ascertain the exact pickup locations and the fastest route to their destination in the United States.

Since the seizure of the Defendant's Garmin was based on probable cause, Place does not apply. Also, because the Defendant concedes that the Coast Guard had search and seizure authority under 14 U.S.C. § 522(a), the Court need not address the issues of whether the search was justified as a border or inventory search. The undersigned concludes that the Defendant's Fourth Amendment rights were not violated by the seizure of his Garmin.

B. Delay in Obtaining Search Warrant

The Defendant next argues that the evidence obtained from his Garmin should be suppressed because of the 12-day delay in presenting the warrant to the

undersigned.[2] The Defendant relies on United States v. Mitchell, 565 F.3d 1347 (11th Cir. 2009), where the court held that a 21-day delay in obtaining a search warrant for a lawfully seized computer hard drive invalidated the search.

The court began its analysis by noting that "while the initial seizure of the hard drive was permissible, even 'a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on unreasonable searches.'" Id. at 1350 (quoting United States v. Jacobsen, 466 U.S. 109 at 124 (1984). "Thus, 'even a seizure based on probable cause is unconstitutional if the police act with unreasonable delay in securing a warrant.'" Id. (quoting United States v. Martin, 157 F.3d 46, 54 (2d Cir. 1998). The reasonableness of the delay is determined on a case-by-case basis, in light of all the facts and circumstances, after a careful balancing of governmental and private interests. Id. at 1351.

Applying these principles to the case before it, the court pointed out the detention of the hard drive constituted a significant interference in Mitchell's possessory interest because computers are relied upon heavily for personal and business use. By contrast, there was no compelling justification for the Government's delay, which was attributed to the drafting agent's departure for a two-week training course. The agent testified that he had not seen any urgency in obtaining the warrant, The court was not persuaded, pointing out that (1) the hard drive had been seized three days prior to the agent's departure date; (2) the application for the warrant contained largely boilerplate language, and (3) another agent could have secured the warrant.

[2] The parties agree that the delay caused by the undersigned's scheduling after the Search Warrant was presented cannot be attributed to the Government. United States v. Laist, 702 F.3d 608, 614-15 (11th Cir. 2012).

Id. The court concluded that the delay was unreasonable, but emphasized that it was "applying a rule of reasonableness that is dependent on all of the circumstances." Id. at 1352.

In the instant case, the Government argues that Mitchell is distinguishable because the Defendant's possessory interest in the Garmin was much less than the possessory interest in a personal computer, and because Agent Heng began preparing the warrant almost immediately after she received the Garmin and continued to work on it until it was finalized and presented to the undersigned. In determining whether the delay in a particular case is unreasonable, a court should consider several factors: (1) the significance of the interference with the individual's possessory interest; (2) the duration of the delay; (3) whether the individual consented to the search, and (4) the Government's legitimate interest in holding the property as evidence. United States v. Laist, 702 F.3d 608, 613-14 (11th Cir. 2012). The court must also take into account whether the police diligently pursued their investigation, which requires consideration of the nature and complexity of the investigation, whether circumstances necessitated the diversion of law enforcement personnel to another case and the quality of the warrant application and the time required to prepare it. Id. at 614.

Evaluation of these factors reveals, as the Government argues, that the Defendant's possessory interest in the Garmin was minimal, the delay was only moderate and Agent Heng's efforts to prepare and present the warrant application were diligent. Considering all the circumstances, the undersigned concludes that the Defendant's Fourth Amendment rights were not violated by the17-day delay (from November 2 to November 19, 2019) in obtaining the Search Warrant.

## III. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that Defendant, Leon Jesus Saiz Fernandez' Motion to Suppress Physical Evidence (ECF No. 20) be DENIED.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Jose E. Martinez, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained therein, except upon grounds of plain error if necessary in the interest of justice. See Thomas v. Arn, 474 U.S. 140, 145–53 (1985); Henley v. Johnson, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

DONE AND SUBMITTED at Key West, Florida, this 12th day of October, 2020.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:

SAUSA Peter Link (MIA)

Leonardo Concepcion, Esq.